**Christophine SAMUEL, Petitioner,**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (CONTAINER COR-
PORATION OF AMERICA), Respon-
dent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 19, 2002.
Decided Nov. 26, 2002.
Reargument Denied Jan. 23, 2003.

Neil S. Kerzner, Philadelphia, for petitioner.

No appearance entered on behalf of respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, and COHN, Judge.

OPINION BY Judge SMITH–RIBNER.

Larry Pitt & Associates (Pitt), attorneys for Christophine Samuel, petition for review of the order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ). The WCJ approved a compromise and release agreement but concluded that Pitt failed to establish that an attorney's fee in excess of 20 percent was warranted. Pitt questions whether a WCJ has the power to limit the attorney's fee as set forth in a compromise and release agreement in light of Section 449 of the Workers' Compensation Act, (Act), Act of June 2, 1915, P.L. 736, *as amended,* added by Section 22 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5, which defines the power of the WCJ in such proceedings as confined to ascertaining that the claimant understands the legal significance of the agreement.

Pitt further questions whether the WCJ must allow any reasonable attorney's fee as agreed upon by the claimant and the claimant's attorney under Section 442 of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 998, when there is a settlement of a workers' compensation case pursuant to a compromise and release agreement; whether Section 442 violates Article V, Section 10(c) of the Pennsylvania Constitution, which places the power to regulate the practice of law, including counsel's fees, exclusively in the judicial branch of government; and whether the WCJ is exercising a power which the legislature never properly possessed or had the power to delegate to an agency of the executive branch.[1] Container Corporation of America (Employer) has filed a notice of non-participation in this matter.

The facts are not in dispute. Samuel received benefits for an April 28, 1989 work-related injury pursuant to a notice of

---

1. Section 449 of the Act governs the requirements of compromise and release agreements, but it does not address attorney's fees. Section 442 of the Act provides:

    All counsel fees, agreed upon by claimant and his attorneys, for services performed in matters before any workers' compensation judge or the board, whether or not allowed as part of a judgment, shall be approved by the workers' compensation judge or board as the case may be, providing the counsel fees do not exceed twenty per centum of the amount awarded. The official conducting

    any hearing, upon cause shown, may allow a reasonable attorney fee exceeding twenty per centum of that amount awarded at the discretion of the hearing official.

    In cases where the efforts of claimant's counsel produce a result favorable to the claimant but where no immediate award of compensation is made such as in cases of termination or suspension the hearing official shall allow or award reasonable counsel fees, as agreed upon by the claimant and his attorneys, without regard to any per centum.

compensation payable, which was issued in June 1989. On September 13, 1991, Employer filed a termination petition and requested supersedeas. The supersedeas was denied and Pitt began receiving 20 percent of Samuel's benefits pursuant to a fee agreement. Samuel eventually prevailed on the termination petition, and she subsequently prevailed on a suspension petition and another termination petition, both of which Pitt defended. On September 8, 2000, Employer filed a petition to seek approval of a compromise and release agreement that provided for a $125,000 payment to release it from any future liability for Samuel's work-injury. Samuel and Pitt entered into a fee agreement for 33⅓ percent of the total settlement, which was $41,666.67. Thereafter, the WCJ held hearings to ascertain whether Samuel understood the legal significance of the compromise and release agreement and to permit Pitt to establish cause for an attorney's fee in excess of 20 percent.

■ The WCJ approved the compromise and release agreement, but she concluded that Pitt failed to establish good cause for an attorney's fee in excess of 20 percent. The WCJ found that there was nothing out of the ordinary with regard to the negotiations and that Samuel did not understand the attorney's fee issue. Moreover, Pitt failed to incorporate language into the agreement to protect Samuel's social security benefits, and such language was included only at the WCJ's direction. The WCJ awarded a 20 percent fee, and the Board affirmed after concluding that absent cause shown, a fee may not exceed 20 percent of the claimant's benefits pursuant to Section 442 of the Act. The WCJ and the Board declined to address

Pitt's arguments concerning the constitutionality of Section 442 as the issue was outside their scope of review. *Ligonier Tavern, Inc. v. Workmen's Compensation Appeal Board (Walker)*, 552 Pa. 237, 714 A.2d 1008 (1998).[2]

■ Although Pitt acknowledges that the Court has rejected his very same arguments in *Cardwell v. Workers' Compensation Appeal Board (Illumelex Corp.)*, 786 A.2d 1014 (Pa.Cmwlth.2001), *appeal denied*, 569 Pa. 685, 800 A.2d 934 (2002), he nevertheless contends that the WCJ is permitted to determine only whether a claimant understands the full legal significance of the compromise and release agreements pursuant to Section 449 and that the amount of the appropriate attorney's fee should be left up to the claimant and the claimant's attorney to negotiate. In *Cardwell* the WCJ granted a compromise and release agreement, but the WCJ denied the request for an attorney's fee of 33⅓ percent because there was no evidence or other "cause shown" under the first paragraph of Section 442 to justify a fee greater than 20 percent. The Court affirmed, concluding that the WCJ fully complied with Section 449 requirements and that the record failed to contain any evidence to justify a fee greater than 20 percent. Section 449 is silent as to the matter of attorney's fees because Section 442 clearly governs all fee agreements in cases before the WCJ. Thus the WCJ had authority to modify a fee which she deemed to be unreasonable to protect Samuel's interests.

■ Pitt next asserts that Section 442 of the Act provides that when there is a favorable result for the claimant, the WCJ shall approve reasonable attorney's fees in

---

**2.** This Court's review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988).

compromise and release agreements without any regard to the per centum, and that 33⅓ percent is the reasonable and customary practice in Pennsylvania. Pitt relies on the following language from Section 442:

> In cases where the efforts of claimant's counsel produce a result favorable to the claimant but where no immediate award of compensation is made such as in cases of termination or suspension the hearing official shall allow or award reasonable counsel fees, as agreed upon by the claimant and his attorneys, without regard to any per centum.

This portion of Section 442 clearly has no application to compromise and release agreements because unlike in termination and suspension cases, there is an immediate award of compensation upon which an attorney may collect a fee.

Lastly, Pitt argues that Section 442 is unconstitutional on its face because it violates the separation of powers doctrine by permitting the legislature to usurp the Pennsylvania Supreme Court's authority to regulate the conduct of attorneys and the practice of law and to delegate that power to a WCJ, a member of the executive branch.[3] When the constitutionality of a statute is challenged, the litigant "must meet the burden of rebutting the presumption of constitutionality by a clear, palpable and plain demonstration that the statute violates a constitutional provision." *Commonwealth v. Stern,* 549 Pa. 505, 512, 701 A.2d 568, 571 (1997) (quoting *Commonwealth v. Kohl,* 532 Pa. 152, 166, 615 A.2d 308, 315 (1992)).

Pitt relies on *Heller v. Frankston,* 76 Pa.Cmwlth. 294, 464 A.2d 581 (1983), among others, in which this Court held that the statute that limited the contingency fees in medical malpractice cases to certain percentages based on the amount recovered was unconstitutional.[4] He also maintains that Rule 1.5 of the Rules of Professional Conduct clearly sets forth a

**3.** Article V, Section 10(c) provides in pertinent part that the "Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts . . . and for admission to the bar and to practice law. . . . All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions."

**4.** Pitt essentially relies on every case in which the courts have struck down legislation as an attempt to regulate the activities of attorneys as a class. They include: *Commonwealth v. Stern,* 549 Pa. 505, 701 A.2d 568 (1997) (legislation criminalizing the conduct of attorneys for paying referrals to non-attorneys was held to be an unconstitutional infringement upon the Supreme Court's powers); *Lloyd v. Fishinger,* 529 Pa. 513, 605 A.2d 1193 (1992) (legislation prohibiting attorneys from entering into contingent fee agreements during the first fifteen days of confinement when a person was hospitalized for his injuries unconstitutionally infringed upon the Supreme Court's powers); *Pennsylvania Public Utility Commission Bar Ass'n v. Thornburgh,* 62 Pa.Cmwlth. 88, 434 A.2d 1327 (1981) (legislation that limited attorneys from representing clients for one year before the governmental body where they were previously associated was held to be unconstitutional as an impermissible intrusion of the legislature into an exclusively judicial function); *Gmerek v. State Ethics Commission,* 751 A.2d 1241 (Pa.Cmwlth.2000), *aff'd by an equally divided court,* 569 Pa. 579, 807 A.2d 812 (2002) (this Court held that the Lobbying Disclosure Act, 65 Pa.C.S. §§ 1301–1311, was unconstitutional because several of the provisions regulated activities that, when performed by attorneys, constituted the practice of law); and *Shaulis v. Pennsylvania State Ethics Commission,* 739 A.2d 1091 (Pa.Cmwlth.1999), *appeal granted,* 561 Pa. 212, 749 A.2d 910 (2000) (this Court concluded that a provision of the Public Official and Employee Ethics Act, 65 Pa.C.S. §§ 1101—1113, that prohibited any former employee from representing a person on any matter before the governmental body for one year after leaving that body did not apply to attorneys). None of the cases address the particular question before the Court.

comprehensive outline of the factors to consider when determining whether a contingent fee is proper and that a WCJ should rely upon the factors provided in Rule 1.5 in reviewing a fee agreement. Moreover, he contends that Section 442 supplants rather than supplements the rule.

Pursuant to subsection (a) of Rule 1.5, some of the factors that should be taken into account in determining the propriety of an attorney's fee include whether the fee is fixed or contingent, the time and labor involved, the novelty and difficulty of the questions involved, the customary fee charged in the locality for similar services, the amount involved and the results obtained. Subsection (c) of Rule 1.5 provides, in pertinent part: "A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) [criminal and domestic matters] or *other law*." (Emphasis added.) The comment to subsection (c) provides that "[a]pplicable law may impose limitations on contingent fees, such as a ceiling on the percentage." Pitt argues that "other law" does not mean statutory law, but rather judicially created law such as common law or rules of court.

Pitt misinterprets Section 442 as a legislative regulation prohibiting contingent fees. Unlike the statute at issue in *Heller*, Section 442 does not limit the amount of the fee that an attorney may recover; rather, it is analogous to Rule 1.5 by requiring the WCJ to determine the reasonableness and the propriety of fee agreements to protect claimants from disingenuous attorneys. In *Weidner v. Workmen's Compensation Appeal Board*, 497 Pa. 516, 442 A.2d 242 (1982), the Supreme Court acknowledged that Section 442 evidences a legislative intent to protect claimants against unreasonable fees

imposed upon them by their attorneys pursuant to improvident fee agreements. Nothing in the language of Section 442 would preclude the WCJ from permitting a higher fee agreement if the attorney showed that such a fee was commensurate with the attorney's efforts. Nor is Section 442 inconsistent with any other rule promulgated by the Supreme Court that regulates the conduct of attorneys. Accordingly, the Court rejects Pitt's arguments, and it holds that neither the WCJ nor the Board erred in this matter.

### ORDER

AND NOW, this 26th day of November, 2002, the order of the Workers' Compensation Appeal Board is hereby affirmed.